IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| HIWASSEE COLLEGE, INC., : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 1:05-CV-0951-JOF |
| THE SOUTHERN ASSOCIATION OF : | |
| COLLEGES AND SCHOOLS, INC., : | |
| : | |
| Defendant. : | |

## OPINION AND ORDER

This matter is before the court on Defendant's motion for entry of judgment [138-1] and Plaintiff's motion for order on remedy [139-1].

Plaintiff, Hiwassee College, sued Defendant, The Southern Association of Colleges and Schools, on March 10, 2005, alleging that SACS violated its constitutional due process rights, the Higher Education Act, and common law due process when it withdrew its accreditation of the college on February 24, 2005. In an order dated February 2, 2007, the court considered each of the manners in which Hiwassee contended that SACS failed to follow its own rules. The court determined that only one of these claims was "colorable" – that Dr. Jimmy Goodson should not have served on the Appeals Committee that reviewed Hiwassee's appeal because he had served on the Compliance and Reports Committees that

reviewed Hiwassee in 2000 and 2003. *See* Order, at 30. The court emphasizes, however, that there is no evidence that Dr. Goodson suffered from an actual conflict of interest. Rather, the allegation with respect to Dr. Goodson is simply that SACS did not follow its own rules in permitting him to sit on the Appeals Committee due to his prior participation in matters related to Hiwassee's accreditation.

Following the court's ruling, SACS filed a motion for entry of judgment on all of Hiwassee's claims. SACS argues that the "colorable" claim raised by Hiwassee as to Dr. Goodson's conflict of interest may allege a breach of duty, but Hiwassee has failed to show that this breach caused Hiwassee's alleged injury, citing *Carey v. Piphus*, 435 U.S. 247 (1977).

Hiwassee cross-filed a motion for order on remedy. Hiwassee asks the court to allow it to proceed with its previously-scheduled decennial review by SACS in 2010. "Such relief is appropriate in light of the due process violation resulting from the participation by a member of the Appeals Committee whose conflict of interest tainted the deliberative process of the committee." *See* Motion, at 3.[1] Hiwassee argues that "the decision made by the

---

[1] Hiwassee specifically rejects three other possible remedies: (1) SACS be ordered to provide a new appeal (because the taint from the prior review permeates the entire case and 2004 data is no longer relevant); (2) SACS be ordered to provide a new review by a Special Committee replicating the process that happened in 2004 (because significant changes have taken place at Hiwassee in the intervening years); and (3) SACS be ordered to provide a new review by a Special Committee under SACS procedures using current data (because SACS's standards have changed dramatically since the 2004-2005 review).

2

tainted Appeals Committee directly resulted in Hiwassee's loss of accreditation," *see* Response, at 8, for which Hiwassee seeks damages under Count VII of its Amended Complaint (alleging that due to SACS's decision to withdraw accreditation, Hiwassee has lost funds that would have come from student tuition and donations to the school). Hiwassee argues that SACS's motion under Rule 58(d) is improper and is an attempt to re-litigate the findings of the court on summary judgment.

Whether couched in terms of Rule 58(d), or a motion for a final judgment or remedy, the court must determine what effect Dr. Goodson's membership on the Appeals Committee has on Hiwassee and its complaint. The court disagrees with Hiwassee's assertion that SACS's motion attempts to re-litigate the issue of conflict of interest. The court determined that Hiwassee raised at least a colorable claim that Dr. Goodson should not have been appointed to the Appeals Committee under SACS's own rules. The next logical question is what effect this potential violation has on SACS's decision to withdraw Hiwassee's accreditation. Since no party had addressed that issue in the motions for summary judgment, the court allowed the parties to file motions after its order on summary judgment.

To determine the impact of Dr. Goodson's presence on the Appeals Committee, the court finds it necessary to review the purpose behind the notion of common law due process as applied in the accreditation context. The court discussed the development of this theory

3

at length in *Auburn University v. SACS*, Civil Action No. 01-CV-2069 (Order dated Jan. 15, 2002), and draws from that discussion here.

*Parsons College v. North Central Association of Colleges & Secondary Schools*, 271 F. Supp. 65 (N.D. Ill. 1967), was the first case to apply common law due process in the accreditation context. There, the court held that the accrediting agency's decision would not be reversed unless it was found to be "contrary to rudimentary due process or grounded in arbitrariness." *Id.* at 71 (quotation and citation omitted). The Fifth Circuit has held that the decisions of accrediting agencies are afforded great deference, and courts generally "focus primarily on whether the accrediting body's internal rules provide a fair and impartial procedure and whether it has followed its rules in reaching its decision." *See Wilfred Academy of Hair & Beauty Culture v. SACS*, 957 F.2d 210, 214 (5th Cir. 1992). The Eighth Circuit held that "[a]lthough not governed by constitutional guidelines, [the accrediting agency] nevertheless must conform its actions to fundamental principles of fairness. These principles are flexible and involve weighing the 'nature of the controversy and the competing interests of the parties.'" *Medical Institute of Minnesota v. NATTS*, 817 F.2d 1310, 1314 (8th Cir. 1987). Similarly, the court in *Thomas M. Cooley Law School v. American Bar Association*, 459 F.3d 705 (6th Cir. 2006), held that the court "reviews only whether the decision of the accrediting agency such as the ABA is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial

4

AO 72A
(Rev.8/82)

evidence." *Id.* at 712-13.  In "analyzing whether the ABA abused its discretion or reached a decision that was arbitrary or unreasonable, we focus on whether the agency 'conform[ed] its actions to fundamental principles of fairness.'" *Id.* at 713 (citing *Medical Institute of Minnesota*).

Boiled down to its essence, therefore, courts have applied a notion of common law due process to the decisions of accrediting agencies to assure fairness in the now crucial process of making educational institutions eligible for federal financial aid dollars.  The underlying interest here is whether SACS's alleged departure from its internal rules has resulted in any fundamental unfairness arising out of the process employed.  Such a determination is flexible and may vary on a case-by-case basis.  It is clear that Dr. Goodson's membership on the Appeals Committee did not interfere with any right of Hiwassee's to have notice and a right to appear and an opportunity to be heard.  Further, no party disputes that the Appeals Committee has a quorum of five members under SACS's rules.  There were six members on the Appeals Committee that considered withdrawing Hiwassee's accreditation.  The decision of the Appeals Committee was unanimous.  Although Hiwassee asserts that Dr. Goodson asked questions during the appellate hearing, Hiwassee has brought forward no evidence to show that Dr. Goodson's presence on the panel has tainted the Appeals Committee, let alone any other proceeding undertaken by SACS since this issue arose.

5

The court finds this situation analogous to section 1983 constitutional claims against a multi-member organization. The Eleventh Circuit has repeatedly held that an "improper motive" of one member of such a commission or panel is insufficient to impute an unconstitutional motive to the entire commission. *See*, *e.g.*, *Campbell v. Rainbow City, Alabama*, 434 F.3d 1306 (11th Cir. 2006); *Mathews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir. 2002); *Mason v. Village of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001). Thus, even if the court were to assume that Dr. Goodson were affected by an actual conflict of interest, Hiwassee has brought forward no evidence to show that Dr. Goodson's conflict permeated the entire six-member appeals committee which rendered a unanimous decision as to Hiwassee's accreditation status. Granting Hiwassee the remedy it seeks – participation in the decennial review scheduled for 2010 – would provide a windfall to Hiwassee in vitiating the procedure SACS has in place to address potential accreditation deficiencies where there is no evidence in the record to indicate that Dr. Goodson's presence on the Appeals Committee affected in any way the fundamental fairness of the process afforded to Hiwassee to challenge SACS's accreditation decision.

For the foregoing reasons, the court GRANTS Defendant's motion for entry of judgment [138-1] and DENIES Plaintiff's motion for order on remedy [139-1].

The United States District Court for the Eastern District of Tennessee entered a temporary restraining order requiring that:

6

1. SACS shall withdraw its decision removing Hiwassee College from membership in SACS and shall reinstate Hiwassee College to full membership in SACS until March 21, 2005, when the Court will hold a hearing and make further rulings in this case.

2. SACS shall notify immediately the Secretary of the United States Department of Education and all other parties notified of its prior removal that Hiwassee College is accredited and reinstated to full membership pursuant to the terms of this order and specifically as set forth in paragraph one (1) above.

Order of The Honorable Thomas A. Varlan, dated March 18, 2005. The court extended that order during transfer of the case to this court. That order has remained in place until this time. Because the court has determined above that judgment should be entered in this complaint in favor of SACS, the court DIRECTS that the temporary restraining order be lifted in fifteen (15) days from the date of this order.

**IT IS SO ORDERED** this 1st day of June 2007.

s/ J. Owen Forrester
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)